■ Rocco Cicero, Respondent, v Triborough Bridge and Tunnel Authority, Appellant. [694 NYS2d 51] —Judgment, Supreme Court, New York County (Alice Schlesinger, J.), entered July 16, 1998, which, in this CPLR article 78 proceeding seeking to annul respondent's determination terminating petitioner's employment as a bridge and tunnel officer with respondent, granted the petition to the extent of annulling said determination and directing that petitioner be reinstated forthwith, unanimously reversed, on the law, without costs, the petition denied and respondent's determination reinstated and confirmed.

Respondent Triborough Bridge and Tunnel Authority terminated petitioner Cicero's employment as a toll collector for excessive absenteeism. During the period between February 3, 1996 and November 5, 1997, petitioner worked 83 days and was absent for 304.5 days, an 80% absentee rate. It is undisputed that most of petitioner's absences were due to an on-the-job injury suffered in May 1996, and that most of them were authorized by respondent after petitioner underwent periodic medical evaluations by respondent's physicians.

Respondent commenced disciplinary proceedings against

petitioner, alleging separate specifications for toll shortages, four unauthorized absences and excessive absenteeism. After a hearing, the Administrative Law Judge (ALJ) sustained the toll shortage and one of the unauthorized absence charges, but dismissed the excessive absenteeism charge. The ALJ acknowledged that petitioner's high volume of absences could be considered "excessive per se." Nonetheless, he concluded it would be unfair to discipline employees for taking lengthy, injury-related leave that was approved by respondent, without first giving the employee additional notice or warning as to what amount of absences would be deemed excessive and subject them to discipline. The ALJ recommended a 5-day suspension for the other infractions.

Upon review, respondent's president Ascher overruled the ALJ and sustained the charge of excessive absenteeism. Ascher found respondent's rules explicitly authorized dismissal as a penalty for excessive absenteeism, and that petitioner's 80% absentee rate was plainly excessive. Ascher further noted that petitioner's absenteeism continued even after the charges were filed against him, and that his excessive absences had resulted in serious morale and financial problems to respondent agency.

Petitioner commenced the instant article 78 proceeding, arguing that Ascher's determination to reject the ALJ's findings was arbitrary and capricious. The IAS Court agreed, granted the petition and directed petitioner's immediate reinstatement. The court concluded that petitioner was deprived of his due process rights, because he was not given notice that his approved absences could ultimately be considered "excessive", and therefore misconduct.

Respondent's termination of petitioner's employment for excessive absenteeism had a rational basis and should not be disturbed (see, Matter of Garayua v Board of Educ., 248 AD2d 714; Matter of Abdalla v Fulton County, 208 AD2d 1168, lv denied 85 NY2d 804; Matter of Romano v Town Bd., 200 AD2d 934, appeal dismissed 83 NY2d 963). The ALJ acknowledged that an absentee rate in excess of 50% "may be deemed excessive per se", and petitioner's absentee rate was well beyond that threshold. However, the ALJ and IAS Court ruled in petitioner's favor on the ground of inadequate notice. We disagree. Respondent's rules clearly state that "excessive absence * * * will be cause for dismissal." Additionally, the governing collective bargaining agreement guarantees employees only 12 days sick leave per year, and respondent promulgated a new policy in 1992 providing that a memorandum of unsatisfactory attendance would be issued to an employee after a fifth sick

day was taken. Thus, petitioner should have been on notice from numerous sources that excessive absences would not be tolerated.

Petitioner correctly notes that respondent also has a rule providing that an employee is entitled to a *maximum* of one year sick leave in the event of a serious on-duty injury. The ALJ believed that this "generous leave policy" created a reasonable expectation in the employees that they were guaranteed up to one year of leave for a line-of-duty injury. However, this rule merely sets the maximum amount of injury-on-duty leave permitted. It does not, as petitioner suggests, preclude respondent from determining that an employee's series of extended absences constitute excessive absenteeism.

Petitioner's argument that his absences were approved and medically justified misperceives the nature of the charges. Petitioner was dismissed on the sole ground that his excessive absenteeism constituted incompetence under Civil Service Law § 75 (*see, Matter of Garayua v Board of Educ., supra; Matter of Abdalla v Fulton County, supra*). "[N]onwillful absenteeism may be adjudicated in a proceeding pursuant to Civil Service Law § 75" (*Matter of Garayua v Board of Educ., supra*). Thus, the fact that one or more of petitioner's absences were authorized "[wa]s irrelevant to the ultimate issue of whether his unreliability and its disruptive and burdensome effect on the employer rendered him incompetent to continue his employment." (*Matter of Romano v Town Bd., supra,* at 934; *see also, Matter of Gradel v Lilholt,* 257 AD2d 972.) In his termination letter, Ascher specifically noted the serious negative impact petitioner's absences had on budgetary and personnel matters, as well as employee morale.

Petitioner also argues that it was arbitrary and capricious to terminate his employment for excessive absences, because the term "excessive" is not defined in respondent's rules or elsewhere. This vagueness argument might have some appeal if petitioner's absences were not so numerous or frequent that reasonable minds may differ as to whether they were excessive. However, that is clearly not the case here, where petitioner's 80% absentee rate over a 19-month period must be considered excessive under any standard.

Under the circumstances, the penalty of dismissal is not so disproportionate to the offense as to shock our sense of fairness (*see, Matter of McDermott v City of New York,* 250 AD2d 538). Concur—Williams, J. P., Mazzarelli, Rubin, Saxe and Friedman, JJ.